William ELLINGSWORTH, and Helen Ellingsworth, his wife, Plaintiffs-Respondents, †

v.

Frederick SWIGGUM, and Susan Swiggum, Defendants-Appellants.

Court of Appeals

*No. 94–1812. Submitted on briefs April 6, 1995.—Decided June 1, 1995.*

(Also reported in 536 N.W.2d 112.)

† Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *Thomas A. Maroney* of *Johnson, Hansen, Shambeau, Maroney and Anderson, S.C.* of Waupaca.

Before Gartzke, P.J., Dykman and Vergeront, JJ.

VERGERONT, J. Frederick and Susan Swiggum appeal from a declaratory judgment permitting William and Helen Ellingsworth to replace a pier at the end of the Ellingsworths' easement on a riparian lot owned by the Swiggums. The Swiggums had removed the pier. After a trial to the court, the court concluded that the Ellingsworths, as non-riparian owners, were permitted to maintain the pier under § 30.131, STATS., and so had the right to replace the pier. We conclude that § 30.131 does not give the Ellingsworths the right to maintain or replace the pier, and therefore we reverse.

The relevant facts are not in dispute. The Swiggums own property (Lot 29) on McCrossen Lake and the Ellingsworths own property across the road from the Swiggums' lot (Lot 23). The Ellingsworths' lot is not on the lake. The Ellingsworths have an easement over the west end of Lot 29, specifically "a right of way over and across the West 15 feet of Lot 29 of McCrossen Plat, and being a subdivision of Gov. Lot 6, Sec. 34-22-11, for ingress and egress to the Lake." Both lots were at one time owned by John and Mary Gagliano; the Gaglianos also owned Lot 24, a non-riparian parcel adjacent to Lot 23. The Gaglianos granted the easement to Ben Johnson over Lot 29 when they sold Lot 23 to him in 1959. Johnson was a predecessor in title of the Ellingsworths. The trial court found the easement granted ingress and egress to McCrossen Lake. The easement was recorded in 1959.

145

The trial court found that during the 1960's, the Gaglianos rented out Lot 29 and used Lot 24 as their cottage. The trial court also found that between 1955 and 1960, the Gaglianos built a pier at the end of the easement over Lot 29 for the benefit of the non-riparian Lots 23 and 24. The Gaglianos sold Lot 29 in 1967. After a number of intervening owners, the Swiggums purchased Lot 29 in 1986. Ben Johnson eventually sold Lot 23, and after two intervening owners, the Ellingsworths purchased Lot 23 in 1990, together with the easement over Lot 29. The pier remained in place until the Swiggums removed it in 1992.

The trial court concluded that the pier removed by the Swiggums met the criteria of § 30.131, STATS., 1991-92,[1] and therefore the Ellingsworths had the right to build another pier of the same dimension as that removed. Section 30.131 provides:

> A wharf or pier of the type which does not require a permit under ss. 30.12(1) and 30.13 that abuts riparian land and that is placed in a navigable water by a person other than the owner of the riparian land may not be considered to be an unlawful structure on the grounds that it is not placed and maintained by the owner if all of the following requirements are met:
>
> (1) The owner of the riparian land or the owner's predecessor in interest entered into a written easement that was recorded before December 31, 1986, and that authorizes access to the shore to a person who is not an owner of the riparian land.

[1] Section 30.131, STATS., was amended by 1993 Wis. Act 167. That amendment is not relevant to this appeal. Unless otherwise indicated, the version of § 30.131 referred to in this opinion is § 30.131, 1991-92.

(2) The person to whom the easement was granted or that person's successor in interest is the person who places and maintains the wharf or pier.

(3) The placement and maintenance of the wharf or pier is not prohibited by and is not inconsistent with the terms of the written easement.

(4) The wharf or pier has been placed seasonally in the same location at least once every 4 years since the written easement described in sub. (1) was recorded.

(5) The wharf or pier is substantially the same size and configuration as it was on April 28, 1990, or during its last placement before April 28, 1990, whichever is later.

(6) The placement of the wharf or pier complies with the provisions of this chapter, with any rules promulgated under this chapter and with any applicable municipal regulations or ordinances.

The construction of a statute when the facts are not disputed presents an issue of law, which this court reviews *de novo* without deference to the trial court's determination. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). We consider first the language of the statute to determine whether the intent of the legislature is clear on its face. *Voss v. City of Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625, 629 (1991).

The plain language of § 30.131, STATS., states that it applies to a "pier . . . that is placed in a navigable water by a person other than the owner of the riparian land." Such a pier is not unlawful if it is of the type that does not require a permit under §§ 30.12(1) and 30.13, STATS., 1991-92, and meets certain conditions specified in § 30.131. Sections 30.12(1) and 30.13, 1991-92, spec-

147

ify the conditions under which a riparian owner may build a pier without a permit. Riparian owners are those who have title to the ownership of land on the bank of a body of water. *Stoesser v. Shore Drive Partnership*, 172 Wis. 2d 660, 665, 494 N.W.2d 204, 207 (1993). The significance of § 30.131 is that it makes piers lawful even if they are built by non-riparian owners, provided the six statutory conditions are met. The first condition is that the riparian owner has granted an easement, recorded prior to December 31, 1986, authorizing access to the shore to a person who is not the riparian owner. Section 30.131(1). The second condition is that the easement holder or that person's successor in interest "is the person who places and maintains the wharf or pier." Section 30.131(2).[2]

The first condition is met. The Gaglianos, the riparian owners of Lot 29 at the time, entered into a written easement that was recorded before December 31, 1986, authorizing access to the shore to Johnson, not an owner of Lot 29. With respect to the second condition, the trial court found that the Gaglianos had placed the pier. It made no finding as to who maintained the pier. Our review of the record discloses that there was testimony that Mr. Swiggum and the Swiggums' predecessor in title, Vincent Wojtech, did some maintenance work on the pier. There was also testimony by the Gaglianos' former son-in-law that he did some maintenance work on the pier. There is no evidence indicating the Ellingsworths, or any preceding owner of Lot 23 and holder of the easement over Lot 29, did maintenance work on the pier. The Ellingsworths have not shown that the pier removed by the Swiggums

---

[2] Since our discussion of the second condition is dispositive, we do not discuss the other conditions.

meets the requirement in the introductory language of § 30.131, STATS., that it was placed by a person other than the owner of riparian land. They have not shown that the pier meets the requirement in § 30.131(2) that the person to whom the easement was granted (Ben Johnson) or Johnson's successor in interest (subsequent owners of Lot 23 including the Ellingsworths) placed and maintained the pier. The statute, then, provides no basis for the Ellingsworths' claim to replace the pier.

The Ellingsworths argue, and the trial court agreed, that in spite of the apparent inapplicability of § 30.131, STATS., it does apply because of *Godfrey Co. v. Lopardo*, 164 Wis. 2d 352, 474 N.W.2d 786 (Ct. App. 1991). The facts in *Godfrey Co.* are complicated, and need some explanation in order to discuss the relevance to this case.

Godfrey owned riparian land on which it developed a subdivision, Westmoor. Godfrey's wholly-owned subsidiary, Store Equipment, Inc., developed a subdivision, Southmoor, on adjoining land that did not have lake frontage. Godfrey granted Store Equipment an easement across Lot 3 of Westmoor to give Southmoor owners lake access. *Godfrey Co.*, 164 Wis. 2d at 358-59, 474 N.W.2d at 788. Godfrey also built a pier at the end of the easement. After construction of the pier, Store Equipment recorded a pier slip agreement granting to future owners of Southmoor the right to buy pier slips. The Lopardos subsequently purchased Lot 3. Although the easement was mentioned in the offer to purchase, it was not included in the deed. *Id.* at 359, 474 N.W.2d at 788. The Lopardos disputed the placement of the pier because it infringed on their riparian rights. Godfrey, Store Equipment and the Southmoor slip owners sued for reformation of the deed and a

declaration of their rights with respect to the pier. The Lopardos counterclaimed, asking that the pier be moved or removed. *Id.* at 360, 474 N.W.2d at 789.

After deciding that the deed should be reformed to include the easement, we considered the application of § 30.131, STATS. Recognizing that the pier was constructed by Godfrey, the original riparian owner, and not Store Equipment, the easement holder, we nevertheless concluded that the second condition in the statute was met. We reasoned as follows:

> We would be interpreting the statute to reach an absurd result if we concluded that for subsec. (2) to apply, Store Equipment or Southmoor subdivision, rather than the parent company of Store Equipment, should have constructed the pier, especially when the parent company constructed the pier expressly for the benefit of the easement holder. Since subsec. (2) permits a pier to be maintained when constructed by an easement holder, it certainly permits a pier to be maintained when it was constructed by the original grantor of the easement *and then given to the easement holder*.

*Godfrey Co.*, 164 Wis. 2d at 370, 474 N.W.2d at 793 (emphasis added).

The critical distinction between *Godfrey Co.* and this case is that Godfrey gave the pier to the easement holder. Once that occurred, the significance of who originally placed the pier disappeared. The easement holder owned the pier and, presumably, maintained the pier, just as if it had built it. In this case, in contrast, there is no evidence that the Gaglianos or any successor riparian owner of Lot 29 gave the pier to the original easement holder or any successor easement holder. There is no evidence that the original or succes-

sor easement holders performed maintenance on the pier. The only evidence on this point indicates that the Gaglianos and successive riparian owners performed maintenance. Application of the plain language of the statute to this case does not yield an absurd result. We conclude that *Godfrey Co.* is not controlling.

The Ellingsworths argue that the easement need not specifically grant them the right to build a pier in order for them to have that right. It is true that, assuming all other conditions are met, § 30.131, STATS., applies if the easement "authorizes access to the shore," § 30.131(1), and if the "pier is not prohibited by and is not inconsistent with the terms of the written easement," § 30.131(3). This language indicates that § 30.131 applies even if the terms of the easement do not expressly permit the placement of a pier by the easement holder. However, § 30.131, when it applies, simply makes the pier placed and maintained by a non-riparian owner not "unlawful"—that is, not a violation of statutes regulating such structures. Section 30.131 does not grant rights to the non-riparian owner vis-a-vis the riparian owner.

*Godfrey Co.* does not aid the Ellingsworths on this point. There was no dispute between Godfrey and the easement holder about the easement holder's ownership of the pier and its right to sell pier slips to Southmoor residents.

The Ellingsworths are correct that *Stoesser* holds that riparian rights may be conveyed by easement to non-riparian owners.[3] In *Stoesser*, the easement provided that the non-riparian owners had the right "to

[3] We note that § 30.133, STATS., as amended by 1993 Wis. Act 167, severely limits this holding.

151

use the lake shore for bathing, boating or kindred purposes." *Stoesser*, 172 Wis. 2d at 664, 494 N.W.2d at 206. Although the non-riparian owners originally claimed the easement gave them the right to erect a pier, they did not pursue that claim. Rather, they claimed that the riparian owners could not interfere with their right as easement holders to use the lake for bathing, boating and similar purposes. The supreme court agreed. *Id.* at 670, 494 N.W.2d at 209. It did not address the issue of an easement holder's right to erect a pier. *Stoesser* does not support the proposition that an easement expressly granting access to a lake implicitly grants the right to build a pier.

We conclude that the Ellingsworths have demonstrated no right to replace the pier the Swiggums removed from the end of the easement over Lot 29.

*By the Court.*—Judgment reversed.