STERLINGWORTH CONDOMINIUM ASSOCIATION, INC., a
Wisconsin corporation, Petitioner-Appellant,

v.

STATE of Wisconsin, DEPARTMENT OF NATURAL
RESOURCES, Respondent-Respondent.

Court of Appeals

*No. 95–3526. Submitted on briefs September 16,
1996.—Decided October 30, 1996.*

(Also reported in 556 N.W.2d 791.)

711

713

716

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Cheryl A. Mick, S.C.* and *James P. Martin, S.C.* of Lake Geneva.

On behalf of the respondent-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Ann M. Zimmerman*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. This case arises from the Wisconsin Department of Natural Resources' (DNR) issuance of a pier permit that expressly limited the number of boat slips Sterlingworth Condominium Association, Inc. (Sterlingworth) may construct or maintain to twenty-five. Sterlingworth challenges the administrative law judge's determination, upheld by the circuit court, that the DNR had the authority to issue the permit; that the permit is supported by substantial evidence in the record; and that the permit condition is reasonable. Because we find no error in the statutory or evidentiary issues raised by Sterlingworth, we affirm the order in its entirety.

Sterlingworth owns property which abuts 331 feet of frontage on Mill Lake and 429 feet of frontage on Sterlingworth Bay in the town of LaGrange in Walworth county. Prior to the condominium development, Sterlingworth Inn operated as a resort, including a hotel, restaurant and meeting center. The former inn was converted to condominiums in 1990. The lakefront plan contemplated thirty-four pier slips which would utilize existing structures and would require the construction of additional structures.[1]

---

[1] Sterlingworth's lakefront plan consisted of adding more pier slips and cribs to two piers, totaling fifteen slips on Mill Lake. The plan also contemplated the extension of an existing deck-like pier and the construction of a similar pier, totaling nineteen slips on Sterlingworth Bay. The town of LaGrange

On February 26, 1992, Sterlingworth submitted an application with the DNR for a permit, pursuant to § 30.12, STATS. On May 1, Liesa K. Nesta, a DNR water management specialist, conducted a site inspection of the Sterlingworth property. In a letter dated May 13, 1992, Nesta expressed the DNR's concern with the number of proposed piers and suggested sixteen slips as a more reasonable number. After several discussions with DNR staff, Sterlingworth filed an amended application on March 3, 1993. Sterlingworth sought to maintain an existing pier 107 feet in length, relocate three existing slip cribs and add three new slip cribs.[2]

On August 30, 1993, the DNR issued findings of fact, conclusions of law and permit (the permit) to Sterlingworth. The permit authorized additional crib pier placement for the 107-foot pier on Mill Lake. The permit also approved all noncribbed piers which existed on May 1, 1992, for a total of twenty-five pier slips. The number of pier slips could not be expanded without an amendment to the permit by the DNR.

On September 28, 1993, Sterlingworth submitted a petition for review of the permit pursuant to § 227.42, STATS. A contested case hearing was held on October 5, and November 1, 1994, before Administrative Law Judge Mark Kaiser (ALJ), who affirmed the DNR's

approved the placement of thirty-four pier slips to be located in accordance with the plan. The town's local ordinance allows for one boat slip per twenty-two feet of frontage. TOWN OF LAGRANGE, WIS., LAKE ORDINANCE FOR LAUDERDALE LAKES § xx(c) (6). Sterlingworth based its figure of thirty-four condominiums and boat slips on this standard.

[2] The total number of slips contemplated in the amended application was twenty-five: fifteen slips on two piers on Mill Lake and the ten existing slips on Sterlingworth Bay.

permit in an opinion dated December 9, 1994.[3]
Sterlingworth next sought review in the circuit court
for Walworth county. On August 25, 1995, the circuit
court affirmed the DNR's findings. Sterlingworth
appeals.

When an appeal is taken from a circuit court order
affirming an agency decision, we review the decision of
the agency, not the circuit court. *Barnes v. DNR*, 178
Wis. 2d 290, 302, 506 N.W.2d 155, 160 (Ct. App. 1993),
*aff'd*, 184 Wis. 2d 645, 516 N.W.2d 730 (1994).
Although we do not defer to the opinion of the circuit
court, that court's reasoning may assist us. *Id.* Review
of an agency's decision is confined to the record. Section
227.57(1), STATS.

The reviewing court must affirm the agency's
action "[u]nless the court finds a ground for setting
aside, modifying, remanding or ordering agency action
or ancillary relief under a specified provision of
[§ 227.57, STATS.]." Section 227.57(2), STATS. Sections

---

[3] At the beginning of the hearing, Sterlingworth filed a
motion to strike paragraph 2 of the permit which expressly
prohibited additional piers without written approval from the
DNR. The issue was briefed and decided between the two
hearings. Sterlingworth raised three arguments: (1) the DNR
has the burden of proof, not Sterlingworth; (2) the DNR has no
authority to regulate the placement and number of piers
constructed by a riparian owner; and (3) the town of LaGrange
ordinances regulating pier density preempt the DNR's
reasonable use standards or establishes a different standard for
reasonable use in the area. The ALJ addressed and dismissed
all three arguments, denying Sterlingworth's motion to strike
paragraph 2.

227.57(4)-(8) list instances where a reviewing court may set aside or modify an agency action or remand the case to the agency for further action, keeping in mind that due weight is accorded to the agency's decision. Sterlingworth challenges the DNR's permit under three of these provisions.

Sterlingworth contends that the DNR exceeded its statutory authority in the issuance of Sterlingworth's permit contrary to § 227.57(5), STATS.; that the DNR's permit is not supported by substantial evidence in the record as required under § 227.57(6); and that the permit condition limiting Sterlingworth to twenty-five piers is arbitrary and capricious contrary to § 227.57(8). Essentially, Sterlingworth questions the inconsequential effect nine additional pier slips will have on the public's interest in both Mill Lake and Sterlingworth Bay, especially in comparison to the economic loss Sterlingworth will suffer without the full thirty-four boat slips.

■ Although nine additional boat slips may seem inconsequential to a proprietor such as Sterlingworth, we approach it differently. Whether it is one, nine or ninety boat slips, each slip allows one more boat which inevitably risks further damage to the environment and impairs the public's interest in the lakes. The potential ecological impacts include direct impacts on water quality and sediment quality alteration, as well as direct and indirect influences on flora and fauna. For this very reason, the consideration of "cumulative impact" must be taken into account. As was explained by the supreme court:

> A little fill here and there may seem to be nothing to become excited about. But one fill, though

comparatively inconsequential, may lead to another, and another, and before long a great body of water may be eaten away until it may no longer exist. Our navigable waters are a precious natural heritage; once gone, they disappear forever. Although the legislature has constitutionally permitted some structures and deposits in navigable waters, it permitted them under sec. 30.12(2)(a), STATS., only if the Public Service Commission [now the DNR] found that 'such structure does not materially obstruct navigation . . . and is not detrimental to the public interest.'

*Hixon v. Public Serv. Comm'n*, 32 Wis. 2d 608, 631-32, 146 N.W.2d 577, 589 (1966). In our opinion, the DNR, in limiting Sterlingworth's permit to twenty-five boat slips, carried out its assigned duty as protector of the overall public interest in maintaining one of Wisconsin's most important natural resources. *See id.* at 632, 146 N.W.2d at 589. We now turn to Sterlingworth's arguments.

DISCUSSION

### *Erroneous Interpretation of Law*

Sterlingworth first argues that the DNR exceeded the scope of its permitting authority, under § 30.12, STATS., by limiting Sterlingworth's rights, as authorized by § 30.13, STATS., and that the ALJ failed to place the burden of proof on the DNR to establish Sterlingworth's noncompliance with the requirements of § 30.13. This argument requires us to construe §§ 30.12 and 30.13. The construction of a statute when the facts are not disputed presents an issue of law subject to our independent review under § 227.57(5), STATS. *See Ellingsworth v. Swiggum*, 195 Wis. 2d 142,

147, 536 N.W.2d 112, 114 (Ct. App. 1995). We first consider the language of the statute to determine whether the intent of the legislature is clear on its face. *See id.*

It is well established that the state holds the beds underlying navigable waters in trust for all of its citizens. *Muench v. Public Serv. Comm'n*, 261 Wis. 492, 501, 53 N.W.2d 514, 517 (1952). The legislature, in furtherance of that trust, has declared it to be unlawful to place any structure on the bed of a navigable water unless a permit has been granted by the DNR, or unless the structure is otherwise authorized by statute. *Cassidy v. DNR*, 132 Wis. 2d 153, 158, 390 N.W.2d 81, 83 (Ct. App. 1986). Sections 30.12 and 30.13, STATS., specify the conditions under which a riparian owner may build a pier without a permit. *See Ellingsworth*, 195 Wis. 2d at 147-48, 536 N.W.2d at 114.

The plain language of § 30.12(1), STATS., states that "unless a permit has been granted by the [DNR] pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful: (a) to deposit any material or to place any structure upon the bed of any navigable water." The DNR may "grant to any riparian owner a permit to build or maintain for the owner's use a structure otherwise prohibited under sub. (1), if the structure . . . is not detrimental to the public interest." Section 30.12(2).

Section 30.13, STATS., is equally clear. Under § 30.13(1)(a), the legislature authorized a riparian owner to construct a pier in a navigable waterway without obtaining a permit under § 30.12, STATS., if the "pier does not interfere with public rights in navigable

waters."[4] However, a pier which interferes with public rights in navigable waters constitutes an unlawful obstruction of navigable waters unless a permit is issued for the pier under § 30.12. Section 30.13(4)(a).

██ Both §§ 30.12 and .30.13, STATS., prohibit structures that are detrimental to the public interest.[5] Both statutes authorize the DNR to weigh the relevant policy factors which include "the desire to preserve the natural beauty of our navigable waters, to obtain the fullest public use of such waters, including but not

---

[4] Section 30.13, STATS., provides in relevant part:

A riparian proprietor may construct a . . . pier . . . without obtaining a permit under s. 30.12 if all of the following conditions are met:

(a) The wharf of pier does not interfere with public rights in navigable waters.

(b) The wharf or pier does not interfere with rights of other riparian proprietors.

(c) The wharf or pier does not extend beyond any pierhead line which is established under sub. (3).

(d) The wharf or pier does not violate any ordinances enacted under sub. (2).

(e) The wharf or pier is constructed to allow the free movement of water underneath and in a manner which will not cause the formation of land upon the bed of the waterway.

[5] Structure is defined as "something constructed or built . . . something made up of more or less interdependent elements or parts." *State v. Bleck*, 114 Wis. 2d 454, 463, 338 N.W.2d 492, 497 (1983). A pier is defined as "any structure extending into navigable waters from the shore with water on both sides, built or maintained for the purpose of providing a berth for watercraft or for loading or unloading cargo or passengers onto or from watercraft." Section 30.01(5), STATS. Clearly, cribbed piers are structures subject to § 30.12, STATS., as are noncribbed piers that fail to satisfy the requirements of § 30.13(1), STATS.

limited to navigation, and to provide for the convenience of riparian owners." *Hixon*, 32 Wis. 2d at 620, 146 N.W.2d at 583. In addition, any person who constructs or places any structure in navigable waters in violation of §§ 30.12 or 30.13 may be fined up to $500 to $1000 per day for each offense. Section 30.15(1)(d), STATS. "Statutes relating to the same subject matter are to be construed together and harmonized." *Cornell Univ. v. Rusk County*, 166 Wis. 2d 811, 819, 481 N.W.2d 485, 489 (Ct. App.) (quoted source omitted), *cert. denied*, 506 U.S. 863 (1992).

■ Sections 30.12 and 30.13, STATS., can be easily reconciled. Section 30.12 requires a permit for any structure that is placed upon the bed of a navigable water *or* those riparian piers that fail to satisfy *all five conditions* under § 30.13(1)(a)-(e). Any riparian pier, secured or not, that interferes with public rights in navigable waters requires a permit under § 30.12. We conclude that under §§ 30.12 and 30.13, the DNR has the authority to place conditions on permits for permanent cribs, secured or not, that fail to satisfy the requirements § 30.13(1), including interference with the public rights in navigable waters, as long as those conditions forward the relevant policy factors.

Sterlingworth further argues that the ALJ erroneously shifted the burden of proof from the DNR to Sterlingworth. Sterlingworth contends that in this case the DNR was required to establish Sterlingworth's noncompliance with the requirements of § 30.13, STATS., and that "the DNR has been allowed to conduct an 'enforcement proceeding' " without meeting its burden of proof.

The customary common-law rule that the moving party has the burden of proof, including not only the burden of going forward but also the burden of persuasion, is generally observed in administrative hearings. *See State v. McFarren*, 62 Wis. 2d 492, 499-500, 215 N.W.2d 459, 463 (1974); *see also Village of Menomonee Falls v. DNR*, 140 Wis. 2d 579, 605, 412 N.W.2d 505, 516 (Ct. App. 1987) (the applicant, not the DNR, has the burden of proof). Although Sterlingworth states the law on the burden of proof correctly, it fails to explain why it should not be applied here.[6] We conclude that Sterlingworth, as the applicant for the permit and petitioner on review, assumed the burden of proving that its proposal would not be detrimental to the public interest.

We also note that the ALJ explained to Sterlingworth at the outset of the hearing that "it could withdraw its request for hearing [and] [i]t could then construct the non-cribbed piers at issue and defend itself in an enforcement action," in which case the DNR

---

[6] Sterlingworth correctly looks to WIS. ADM. CODE § NR 2.13 (3) for burden of proof determinations. Section NR 2.13(3) provides:

> (a) In proceedings where the department has issued an order or proposed order and the order recipient requests a hearing on the matter, the department shall proceed first with the presentation of evidence and shall have the burden of proof.

> (b) Unless otherwise ordered by the department or the hearing examiner, in proceedings where a person has been granted a hearing under s. 227.42, Stats., . . . such persons shall proceed first with the presentation of evidence and shall have the burden of proof.

Here, Sterlingworth submitted its petition for review under § 227.42, STATS., and therefore assumed the burden of proof.

would have had the burden of proof. Sterlingworth, however, elected to continue with the hearing and accordingly accepted the burden of proving that the structures in its application would not be detrimental to the public interest. The ALJ's determination was correct.

### Facts not Supported by Substantial Evidence

Sterlingworth also contends that we should reverse the DNR's permit because it was based upon a finding that "activities related to the use of navigable waters cause disturbances *which may impact the biotic resources* of those waters" was not supported by substantial evidence. Rather, Sterlingworth maintains that "the evidence . . . represents facts *relevant* to the diminimus extent to which the nine additional piers in *this case* would create detriment to public rights . . . ."

This court may set aside or remand the case to the agency if the agency's action depends on any finding of fact made in a contested case proceeding that is not supported by substantial evidence in the record. Section 227.57(6), Stats. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Gilbert v. Medical Examining Bd.*, 119 Wis. 2d 168, 195, 349 N.W.2d 68, 80 (1984). The agency's decision may be set aside by a reviewing court only when, upon an examination of the entire record, the evidence, including the inferences therefrom, is such that a reasonable person, acting reasonably, could not have reached the decision from the evidence and its inferences. *Hamilton v. DILHR*, 94 Wis. 2d 611, 618, 288 N.W.2d 857, 860 (1980). In addition, the weight and credibility of the evidence are for the agency, not the reviewing court, to determine.

*Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979). We conclude that substantial evidence exists to support each disputed finding. We will discuss each, in turn, and summarize the evidence which supports it.

The ALJ found that Sterlingworth Bay is used by fish for spawning and nursery activity which may be disrupted during construction of the piers and by increased boat traffic. Evidence of record establishes that sediment suspension would increase during construction and the additional boat slips would also interfere with fish spawning and nursery activity. A DNR fisheries biologist, who conducted a fisheries survey, testified in support of this finding. The evidence was adequate to support the finding.

Next, Sterlingworth disputes the ALJ's finding that shading from proposed piers would adversely affect the community of aquatic plants and fauna and that increased boat traffic may introduce nuisance species. DNR lake management specialist, Robert Wakeman, testified that there would be a "resting impact," resulting in a shading effect, which could potentially have an impact on the aquatic plant community in the immediate area. Wakeman also explained that there would be an "active impact," due to the associated uses of the pier area. He stated that the "aquatic plants in that immediate area will be disturbed . . . displaced, and . . . there is a potential of bringing fragments . . . of Eurasian water milfoil, and having those fragments seed themselves or become established in that immediate area . . . ." Nesta, a DNR water management specialist, provided similar

testimony. The evidence was adequate to support the finding.

Sterlingworth also challenges the ALJ's finding that "[c]onstruction of the proposed additional piers may also adversely impact water quality . . . by disturbing sedimentation and increased turbidity. However, this impact, if any, would be minimal due to the slow no-wake' speed limit . . . ." This finding is supported by the testimony of two DNR employees who stated that the nine additional slips would cause increased disturbance of sediment, thereby increasing turbidity and the release of phosphates. The DNR also presented a motor survey and exhibits in support of these comments. The evidence is supportive of the ALJ's finding.

Lastly, Sterlingworth contests the finding that the natural scenic beauty of Sterlingworth Bay would be adversely affected by the construction of the additional proposed piers. This finding is supported by the testimony of a DNR employee. In support of her testimony, she also provided photographs of the proposed site. The ALJ's finding is supported by the evidence.

Sterlingworth further maintains that the ALJ and the circuit court "erroneously merged the statutory requirement of 'substantial evidence' with the concept of 'cumulative impact,' " yet it continues to argue the "diminimus extent to which the nine additional piers in *this case* would create detriment to public rights . . . ." The importance of considering the "cumulative impact" of gradual intrusions into navigable waters was explained by the supreme court in *Hixon*, 32 Wis. 2d at

631-32, 146 N.W.2d at 589. Here, the DNR presented testimony that the shoreline area of Sterlingworth Bay is used by fish for spawning and nursery activities which would be disrupted during construction of the piers and by the increased boat traffic. The DNR also explained that the shading from the piers would adversely affect the community of aquatic plants in the bay and increased boat activity could introduce nuisance species into the area. The DNR further testified that the construction of the proposed piers could have a minimal impact on water quality due to the "slow no-wake" speed limit; nevertheless, the proposed additional piers would adversely affect the natural scenic beauty of the Sterlingworth Bay shoreline. We conclude that not only was there substantial evidence to support the disputed findings of fact, but *Hixon* alludes to the importance of considering the cumulative impact of permitting regulations on the state's navigable waters.

### *Arbitrary and Capricious*

Sterlingworth charges that the permit condition which limits Sterlingworth to twenty-five pier slips is arbitrary and capricious. When applying the arbitrary and capricious standard, we determine whether the agency's action had a rational basis, not whether the agency acted on the basis of factual findings. Rational choices can be made in a process which considers opinions and predictions based on experience. *J.F. Ahern Co. v. Building Comm'n*, 114 Wis. 2d 69, 96, 336 N.W.2d 679, 692 (Ct. App. 1983); *see also* § 227.57(8), STATS.

In determining the number of slips to permit, the DNR followed its informal program guide for piers and

moorings contained in the DNR water regulation handbook. The guide provides direction to DNR field staff in determining when pier proposals may have an impact on public rights in waterways as established by § 30.13(1)(a), STATS. The guide sets a presumption of "reasonable use" at two spaces at a pier for the first fifty feet or lesser amount of shoreline and one more space for each additional fifty feet of shoreline in common ownership. However, DNR employees are to consider whether other statutory criteria, i.e., § 30.13(1)(a) or other public interest factors, i.e., critical habitat, would impose greater restrictions on construction and placement before applying this formula.

■

The common law also requires "reasonable use" by riparian owners.

> [E]very . . . right which a riparian owner acquires, as such, to the waters . . . by his land, is restricted always to that which is a . . . reasonable use, and these terms are to be measured and determined by the extent and capacity of the [lake], the uses to which it has been put, and the rights that other riparian owners on the same [lake] also have.

*See Apfelbacher v. State*, 167 Wis. 233, 239, 167 N.W. 244, 245 (1918); *see also State v. Zawistowski*, 95 Wis. 2d 250, 261-62, 290 N.W.2d 303, 309 (1980). The DNR's informal guidelines reconcile the common law "reasonable use" doctrine with the statutory limitations on a riparian owner's right to the use of a navigable water. Both presume "reasonable use" by riparians, but allow for variations based on value and policy considerations.

731

Even though the DNR's guidelines do not have the force and effect of law, *see State v. Amoco Oil Co.*, 97 Wis. 2d 226, 242, 293 N.W.2d 487, 495 (1980), and are not controlling on the courts, *see Swanson v. Department of Health & Social Servs.*, 105 Wis. 2d 78, 88, 312 N.W.2d 833, 838 (Ct. App. 1981), the guidelines illustrate the DNR's experience and expertise in regulating piers under § 30.12, STATS. When an agency has particular competence or expertise on an issue, we will sustain its legal conclusions if they are reasonable. *Nelson Bros. Furniture v. DOR*, 152 Wis. 2d 746, 753, 449 N.W.2d 328, 330-31 (Ct. App. 1989). We also accord special deference to the agency's decision if it is intertwined with value and policy determinations. *Id.* at 753, 449 N.W.2d at 331.

Our review of the record made before the ALJ convinces us that the DNR's permit, which took into account the informal program guidelines, was not arbitrary or capricious. Nesta testified that once the reasonable use threshold indicated that additional permitting inquiry under § 30.12(2), STATS., was required, she then engaged in that analysis as well. Nesta visited the site, gathered information and received comments from other DNR managers. From this information, Nesta concluded that

> there would be harm to fish spawning and nursery habitat in the bay. I also concluded that there would be negative effects on natural shoreline beauty by having excessive structures. Also, cumulatively, the effect of riparians consuming their entire riparian zone with structures that also decreases natural shoreline beauty and leads to overcrowding, of shoreline areas. Also, cumulatively, there would be

contributions to overcrowding of the lake and boating safety.

She also stated that the final number of twenty-five boat slips was "in part a compromise and also recognition of the fact that there were existing structures that had been there for some time and to not . . . cause [Sterlingworth] problems by requiring [it] to remove structures that had been there previously." We conclude that the DNR's action was reasonable, had a rational basis and was not the result of an unconsidered, wilful and irrational choice of conduct. *See Hixon,* 32 Wis. 2d at 631, 146 N.W.2d at 589. Accordingly, we affirm the trial court's order upholding the DNR's permit expressly limiting Sterlingworth to twenty-five boat slips.

*By the Court.*—Order affirmed.