Pastori M. BALELE, Petitioner-Appellant,

v.

WISCONSIN PERSONNEL COMMISSION, Department of
Employment Relations, Division of Merit Recruitment
and Selection, Department of Transportation, and
Department of Health and Social Services,
Respondents-Respondents.

Court of Appeals

*No. 98–1432. Submitted on briefs October 14, 1998.—Decided
December 23, 1998.*

(Also reported in 589 N.W.2d 418.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Pastori M. Balele,* pro se.

On behalf of the respondents-respondents, the cause was submitted on the brief of *David C. Rice,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

Before Eich, Roggensack and Deininger, JJ.

DEININGER, J.   Pastori Balele appeals an order of the circuit court that affirmed decisions by the Wisconsin Personnel Commission. Balele claims that the commission improperly dismissed the Department of Employment Relations (DER) and the Division of Merit Recruitment and Selection (DMRS) as parties to his complaints of discrimination and retaliation against two other state agencies. We conclude, however, that the commission properly dismissed the DER and the DMRS as parties because those agencies had no authority to participate in the allegedly discriminatory

or retaliatory actions for which Balele sought relief. Accordingly, we affirm the order of dismissal.

## BACKGROUND

This appeal arises from two complaints that Balele filed with the Wisconsin Personnel Commission alleging that two state agencies, the Department of Health and Social Services (DHSS)[1] and the Department of Transportation (DOT), each violated the Wisconsin Fair Employment Act (WFEA) in failing to hire Balele. In both cases, Balele applied for career executive positions,[2] and the DMRS certified Balele as being qualified for them. Balele was interviewed for both positions, but did not get either one. He alleged in his complaint to the commission that the agencies had discriminated against him because of his race, and had retaliated against him because he had previously filed lawsuits against state agencies.

Balele also named the DER and the DMRS as respondents in both complaints. Balele alleged that the DER and the DMRS exerted sufficient control over the appointment process that they should be considered employers under WFEA. Balele further alleged that the DER and the DMRS had contributed in various ways to the discrimination against him, and thus they were proper parties to his complaint. The commission dismissed the complaints against the DER and the

---

[1] The Department of Health and Social Services has since been renamed the Department of Health and Family Services. The division of DHSS to which Balele had applied, the Division of Vocational Rehabilitation, has since been transferred to the Department of Workforce Development.

[2] The career executive program, established by § 230.24, STATS., has special procedures for certifying candidates for higher-level positions.

DMRS on the grounds that neither agency had statutory authority to control the interview procedures and appointment decisions that Balele alleges were unlawful. Balele then requested the commission to dismiss his complaints against the DOT and the DHSS, so that he could pursue judicial review of the decision regarding the DER and the DMRS. *Cf. Pasch v. DOR*, 58 Wis. 2d 346, 358, 206 N.W.2d 157, 163 (1973) (all issues arising out of a claim constitute one proceeding before the agency, and must be raised on appeal of the agency's final determination on the merits of the claim). The commission dismissed the DOT and the DHSS, and Balele sought review in circuit court. The circuit court consolidated the reviews of the two complaints, and it affirmed the commission's dismissal of the DER and the DMRS. This appeal followed.

## ANALYSIS

*a.   Standard of review.*

In an appeal of a circuit court order affirming an agency decision, we review the agency's decision, not the trial court's decision. *See Sterlingworth Condominium Ass'n v. DNR*, 205 Wis. 2d 710, 720, 556 N.W.2d 791, 794 (Ct. App. 1996). In this case, the commission's decision regarding the statutory authority of the DER and the DMRS did not involve fact finding, but turned on the interpretation of the statutes defining the authority of the DER and the DMRS. An agency's statutory interpretation is entitled to "great weight deference" if: (1) the legislature has charged the agency with the duty of administering the statute; (2) the agency's interpretation is one of long-standing; (3) the agency used its expertise or specialized knowledge in

743

forming the interpretation; and (4) the interpretation of the agency will provide uniformity and consistency in the application of the statute. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995).

We conclude that, under the principles articulated in *Harnischfeger*, the commission's interpretation of the statutory authority of the DER and the DMRS regarding employment matters is entitled to great weight deference. The legislature has charged the commission with receiving and processing complaints of discrimination brought by state employees, and with hearing appeals of decisions by the DER secretary and the DMRS administrator. *See* § 230.45(1), STATS. The commission's interpretation of the scope of the DER and the DMRS authority is of long-standing, dating from at least its decision in *Seep v. DHSS*, No. 83–0032-PC (Wis. Personnel Comm'n Oct. 10, 1984). The commission used its specialized knowledge of the state's civil service system in forming this interpretation, and this interpretation will provide uniformity in processing complaints of discrimination involving state agencies.

Because we accord the commission's interpretation great weight deference, we will sustain the commission's decision if it is "merely . . . reasonable," and the burden is on Balele to show that the commission's decision is unreasonable. *See Harnischfeger*, 196 Wis. 2d at 661, 539 N.W.2d at 102. "An interpretation is unreasonable if it directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis." *Id.* at 662, 539 N.W.2d at 103.

### b. The commission's dismissal of the DER and the DMRS without a hearing.

We begin with a procedural matter. Balele contends that he was entitled to an evidentiary hearing on the question of whether the DER and the DMRS were proper parties to his complaint. Balele argues that, under Wisconsin's rules of civil procedure, the DER motion to dismiss became a motion for summary judgment when he filed affidavits and other exhibits in opposition to that motion. *See* § 802.06(3), STATS. He further argues that Wisconsin administrative procedures do not allow the dismissal of complaints on summary judgment. Thus, Balele contends that once he had filed responsive affidavits and exhibits, the commission could no longer entertain the motion to dismiss the DER and the DMRS. We disagree.

Wisconsin statutes neither explicitly provide for nor preclude the commission's disposition of complaints on summary judgment. Wisconsin's administrative procedure statutes, however, provide that a party to a contested case is entitled to a hearing only when "[t]here is a dispute of material fact." *See* § 227.42(1)(d), STATS. We find no Wisconsin authority on the question of whether this statute, or any other, authorizes state agencies to employ summary judgment procedures in administrative adjudications.[3] We

---

[3] We note that summary judgment is not authorized in judicial review proceedings under ch. 227, STATS., because judicial review proceedings are themselves summary in nature. *See Wisconsin's Environmental Decade, Inc. v. PSC*, 79 Wis. 2d 161, 170, 255 N.W.2d 917, 923 (1977). The same rationale does not apply to the underlying administrative adjudication, however, which generally involves fact finding and the development of an original record, similar to a trial.

find persuasive, however, the analysis in *Puerto Rico Aqueduct & Sewer Authority v. United States Environmental Protection Agency*, 35 F.3d 600 (1st Cir. 1994). In that case, the First Circuit concluded that an EPA regulation, which provided for an administrative hearing after a preliminary rejection of a permit only when there were "material issues of fact relevant to the issuance of the permit," authorized the EPA to use summary judgment procedures similar to those used in judicial procedures. *See also* KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE, § 8.3 (3d ed. 1994 & Supp. 1998) (in the federal context, oral evidentiary hearings are necessary only to resolve disputed material facts, not questions of law or policy). We conclude that § 227.42(1)(d), STATS., provides authority for state agencies, such as the commission, to develop appropriate summary disposition procedures, where the disposition does not require the resolution of any disputes of material fact, unless such summary procedures are otherwise precluded by statute.[4]

The commission does not explicitly provide for summary dispositions in its administrative regulations. *See* WIS. ADM. CODE chs. PC 1–5. Nonetheless, the commission has determined that "if it can be determined that there are no disputed issues of material fact, the Commission can issue a decision without an evidentiary hearing in what amounts functionally to a summary judgment proceeding." *Balele v. Chancellor, Univ. of Wis. Sys.*, No. 91–0002-PC-ER (Wis. Personnel Comm'n June 11, 1992). The commission also explained, however, that its "summary judgment" pro-

---

[4] There is no constitutional requirement for a hearing when the complaint does not involve a dispute as to a material fact. *See Puerto Rico Aqueduct & Sewer Auth. v. United States Envtl. Protection Agency*, 35 F.3d 600, 606 (1st Cir. 1994).

cedures must be adapted to the circumstances of the types of claims brought before the commission:

> [C]ertain factors must be kept in mind in evaluating such a motion in a case of this nature. First, this case involves a claim under the Fair Employment Act with respect to which complainant has the burden of proving that a hiring decision, which typically has a multi-faceted decisional basis, was motivated by an unlawfully discriminatory intent. Second, complainant is unrepresented by counsel who presumably would be versed in the sometimes intricate procedural or evidentiary matters than can arise on such a motion. Third, this type of administrative proceeding involves a less rigorous procedural framework than a judicial proceeding. Therefore, particular care must be taken in evaluating each party's showing on the motion to ensure that complainant's right to be heard is not unfairly eroded by engrafting a summary judgment process designed for judicial proceedings.

*Id.* at 6.

It is not necessary for us to decide whether the commission may employ a summary judgment procedure which replicates the form and function of § 802.08, STATS. We conclude that the summary disposition procedure used by the commission in the cases currently before us was not a full-blown summary judgment procedure of the type established under § 802.08, for actions in circuit court. The DER and the DMRS filed motions to dismiss Balele's complaints, asserting that even if Balele's factual allegations were true, he had not stated a claim against the DER and the DMRS because the statutes did not give them control over the decisions that Balele alleged were unlawful. In response, Balele submitted additional material which

he contended proved that the DER and the DMRS controlled the appointment process. The commission considered Balele's additional material and determined that the facts as shown by this additional material, and the allegations of Balele's complaint, even if true, did not state a claim against the DER and the DMRS.

Thus, although the commission considered "matters outside the pleadings," the DER/DMRS motions were still decided on the grounds that Balele's allegations had failed to state a claim, not on the basis that he had failed to establish a genuine factual dispute. We conclude that the commission's consideration of matters beyond Balele's complaint does not preclude it from granting a motion to dismiss for failure to state a claim. Because the commission dismissed Balele's complaints for failure to state a claim, we need not decide here to what extent the commission's summary dispositions in other contexts may permissibly parallel the summary judgment procedures authorized by § 802.08, STATS., for actions in circuit court.[5]

---

[5] Balele cites *Jacobs v. Glenmore Distilleries Co.*, ERD Case No. 8952129 (LIRC Nov. 25, 1992), to support his contention that administrative procedures do not permit summary judgment. *Jacobs* does not support Balele's argument for two reasons. First, *Jacobs* is a Labor and Industry Review Commission (LIRC) case. The Personnel Commission is not bound by the LIRC's decision whether to institute summary judgment procedures for actions over which it has cognizance. Second, Balele's complaint against the DER and the DMRS could have been dismissed under the LIRC procedures outlined in *Jacobs*.

In *Jacobs*, the LIRC held that "there is no procedure whereby a respondent, merely by filing a motion and supporting affidavit which disputes material facts alleged by a complainant, can somehow force the complainant to file responsive

### c. *Whether the DER and the DMRS were proper parties to the complaint.*

We turn now to the substance of the DER and DMRS motion to dismiss Balele's complaints against them. Balele contends that the DER and the DMRS were proper parties to his complaints because the DER and the DMRS "were responsible for 'appointment' and 'promotion' of the successful individual into the positions at the DOT and the DHSS[DWD]."·We disagree. The commission properly determined that the DER and the DMRS had no statutory authority to control the appointment decisions that Balele alleges were unlawful.

Chapter 230, STATS., establishes the structure of the state civil service system. The DER secretary "is charged with the effective administration of [chapter 230]. All powers and duties, necessary to that end, *which are not exclusively vested by statute in the com-*

---

affidavits or risk having the case dismissed on the version of the facts advanced by the respondent." *Id.* at 3. The LIRC also concluded, however, that an agency can dismiss a complaint without a hearing "where it appears that even if what is claimed by complainant is true, there would be no violation of the Act as a matter of law," and in doing so, an agency may look not only to the allegations of the complaint, but also "to any other assertions of the complainant which provide an indication of the nature of the claim." *Id.* In other words, although the LIRC procedures do not provide for disposition on "summary judgment," its administrative procedures permit dismissal for failure to state a claim, which may involve consideration of matters outside the pleadings. The outcome for Balele would thus be the same under the procedures described in *Jacobs*: his complaint could be dismissed for failure to state a claim, even though he had provided affidavits and other evidence in response to the motion to dismiss.

*mission, the administrator or appointing authorities,* are reserved to the secretary." Section 230.04(1), STATS. (Emphasis added.) The administrator of the DMRS is responsible for the recruitment, § 230.14, STATS., the examination, § 230.16, STATS., and the certification of eligible candidates to the appointing authority, § 230.25, STATS. The appointing authority, generally the chief administrative officer of the hiring agency or the officer's delegate, § 230.03(4), STATS., has the power to "appoint persons to or remove persons from the classified service," § 230.06(1)(b), STATS.

Under the civil service appointment procedures established by these provisions, the administrator of the DMRS examines applicants and certifies those that are qualified. *See* § 230.25, STATS. The appointing authorities, in this case the secretaries of the DOT and the DHSS, or their designees, actually make the appointment decisions. The DER and the DMRS do not control, and are not accountable for, aspects of the appointment process carried out by state agencies acting as appointing authorities. The commission has consistently held that "[t]he point of certification marks the extent of the [DMRS] administrator's legal authority in the selection process. The appointing authority is generally responsible for action in the selection process which occur after the point of certification." *Balele v. Secretary, DNR*, No. 95–0029-PC-ER (Wis. Personnel Comm'n June 22, 1995) (quoting *Seep v. DHSS*, No. 83–0032-PC (Wis. Personnel Comm'n Oct. 10, 1984)).

■
We conclude that the commission's interpretation of the relevant provisions of ch. 230, noted above, does not contravene either the statutory language or the legislature's intent, nor is the interpretation without a

rational basis. In the cases at issue here, Balele was certified as qualified for both positions by the DMRS. Thus, any discrimination or retaliation against Balele occurred after the DMRS's authority over the appointment process terminated. Because the commission has reasonably interpreted ch. 230 to transfer control of the appointment process from the DER and the DMRS to the appointing authority after the point of certification, the commission properly dismissed Balele's complaints against the DER and the DMRS.

Balele contends, however, that the DER's and the DMRS's control over the appointment process is established by "delegation agreements" under which the DMRS has delegated to the DHSS and to the DOT authority over certain personnel matters. *Cf.* § 230.05(2)(a), STATS. ("[T]he administrator may delegate, in writing, any of his or her functions set forth in this subchapter to an appointing authority . . . if the administrator finds that the agency has personnel management capabilities to perform such functions effectively. . . ."). Balele argues that in the delegation agreements, the DMRS delegates authority over appointments to the DHSS and the DOT, but maintains a significant measure of control over the appointment process. According to Balele, these delegation agreements demonstrate that the DMRS had ultimate authority over appointments at the DHSS and at the DOT, because the DMRS could not delegate power that it did not have. We disagree. The terms of the delegation agreements cannot supersede the language of the statutes, and ch. 230, STATS., does not give the DMRS authority over the appointment process after the point of certification.[6]

---

[6] We also find Balele's argument on this point somewhat circular and self-defeating. If the DMRS had delegated to the

Balele also contends that the DER and the DMRS exert control over the appointment process at the DHSS and the DOT by way of the "Personnel Manual," in which the DER and the DMRS recommend interview and selection process guidelines for career executive positions. As with the delegation agreements, however, the terms of the personnel manual cannot supersede the language of the statutes, and ch. 230 does not give the DMRS any authority over the appointment process after it has certified eligible candidates to the appointing authority. If the final interview and selection procedures employed by the DHSS and the DOT were discriminatory, as Balele alleges, those agencies must answer for them, regardless of whether the procedures were developed from the DER and the DMRS recommendations or from other sources.

Finally, Balele claims that the Personnel Commission has itself discriminated against Balele on the basis of his race, in violation of his constitutional rights. Balele contends that in cases involving white complainants, the commission applied principles which, if applied here, would permit the DER and the DMRS to be proper respondents. Balele's claim against the commission is without merit. Balele cites only one prior commission case in support of this claim, *Betz v. President, University of Wisconsin System (Extension)*, No. 88–0128-PC-ER (Wis. Personnel Comm'n Feb. 8, 1991), and the present record does not establish the race of the complainant in that case. We will not consider assertions of fact that are not part of the record.

DHSS and the DOT authority over the employment process which it would otherwise exercise, that is all the more reason for Balele's complaint against the DER and the DMRS to be dismissed, thereby requiring only the DHSS and the DOT to answer for their allegedly discriminatory hiring practices.

*See Jenkins v. Sabourin*, 104 Wis. 2d 309, 313–14, 311 N.W.2d 600, 603 (1981). Moreover, the cases that establish the principles on which Balele relies are factually distinguishable and would not compel the commission to decide the present issue in Balele's favor.

## CONCLUSION

Balele's complaints allege that discrimination and retaliation occurred in the interviewing and selection process after he was certified as qualified by the DMRS for positions he sought at the DOT and the DHSS. Had he proven his claims, Balele would have been entitled to full relief from the DOT and the DHSS. The commission has reasonably interpreted the provisions of ch. 230, STATS., in concluding that the DER and the DMRS had no authority to control the appointment process after certification. Thus, the commission properly dismissed the DER and the DMRS as parties, and the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.