Lewis J. BORSELLINO, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Respondent-Respondent,

Eileen M. ROTHSTEIN, Samuel Bonanno, and Marilyn
Bonanno, Interested Parties-Respondents.

Court of Appeals

*No. 99–1220. Submitted on briefs October 8, 1999.—Decided
December 23, 1999.*

## 2000 WI App 27

(Also reported in 606 N.W.2d 255.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Peter B. King* of *Peter B. King, Attorney at Law, S.C.* of Fontana.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Joanne F. Kloppenburg*, assistant attorney general.

On behalf of the interested parties-respondents, the cause was submitted on the brief of *Patrick J. Hudec* and *Gabrielle Boehm* of *Hudec Law Offices, S.C.*

Before Dykman, P.J., Roggensack and Deininger, JJ.

¶ 1. DYKMAN, P.J. Lewis J. Borsellino appeals from a circuit court order affirming the Wisconsin Department of Natural Resources' (DNR) decision to grant a pier permit to his neighbors, Samuel and Marilyn Bonanno. Borsellino argues that the DNR erred by granting the permit on the condition that the Bonannos comply with a town pier placement ordinance and with WIS. ADM. CODE § NR 326.07(3).

433

Borsellino also argues that the DNR's decision to grant the permit violated the public trust and reasonable use doctrines. We disagree with each of his arguments. Because we conclude that the DNR's decision to issue the permit was reasonable and supported by substantial evidence, we defer to the DNR's decision and affirm the order of the circuit court.

## I. Background

¶ 2. Paul and Catherine Wurtz owned property on the northwest shore of Lake Geneva in the Town of Linn. In 1966, the Wurtz's divided the property into three lots, now owned by Borsellino, the Bonannos, and Ralph and Eileen Rothstein. Borsellino's lot is on the lakeshore, while the Bonannos' and the Rothsteins' lots are upland. The Bonannos also own a twelve-foot-wide strip of land on the shore of the lake between Borsellino's lot and a lot owned by John and Susan Ciciora. When the Wurtzes divided their property, this twelve-foot-wide lot provided access to the lake for the owners of what is currently the Bonannos' and the Rothsteins' lots. Every year since 1968, the owners of the Bonannos' and the Rothsteins' lots placed a 78.7 foot long pier in the lake adjacent to the access lot.

¶ 3. In 1996, Borsellino filed a complaint with the DNR regarding the seventy-eight-foot pier. In 1997, an administrative law judge ordered the Bonannos to remove the pier because it exceeded the reasonable use of public waters and extended into Borsellino's riparian zone. In January 1998, the Bonannos applied to the DNR for a permit to construct a new pier in the water adjacent to the access lot. The proposed pier is ninety-six feet long and six feet wide for most of its length. In its section from forty-eight to seventy-two feet away from shore, the proposed pier is only three feet wide,

but has an eight-and-one-half-foot wide boat lift attached.

¶ 4. After the DNR issued a notice of proposed pier, Borsellino and the Cicioras objected, arguing that the Bonannos' pier would interfere with their riparian rights and create too much congestion. The DNR filed a request for a hearing with the Division of Hearings and Appeals (DHA). After the hearing, the DHA administrative law judge (ALJ) granted the Bonannos a permit to build the proposed pier under § 30.12(2), STATS.[1] The ALJ concluded that the pier was permissible under § 30.12(2) because it would not impair navigation and would not be detrimental to the public interest. The ALJ acknowledged that the proximity of the pier to the Borsellino and Ciciora piers presented the potential for conflicts. As a result, the ALJ concluded that the pier should have only one boat slip and only one boat moored next to it at any time. The ALJ granted the permit subject to several conditions. One of the conditions was that the Bonannos "shall obtain any necessary authority needed under local zoning ordinances." The ALJ also stipulated that the Bonannos locate the pier in compliance with WIS. ADM. CODE § NR 326.07(3).[2] Borsellino petitioned the Dane County Cir-

---

[1] Section 30.12(2), STATS., provides, in part:

> The department, upon application and after proceeding in accordance with s. 30.02(3) and (4), may grant to any riparian owner a permit to build or maintain for the owner's use a structure otherwise prohibited under sub. (1), if the structure does not materially obstruct navigation or reduce the effective flood flow capacity of a stream and is not detrimental to the public interest.

[2] WISCONSIN ADM. CODE § NR 326.07(3) provides:

> To provide each riparian with sufficient room to place a pier and moor a boat along the common line between adjacent riparians the following technique will be used:

cuit Court to review the decision to grant the permit and the circuit court affirmed. Borsellino appeals.

## II. Standard of Review

¶ 5. In an appeal from a circuit court order affirming an agency determination, we review the decision of the agency, not that of the circuit court. *See Sea View Estates Beach Club, Inc. v. DNR*, 223 Wis. 2d 138, 145, 588 N.W.2d 667, 670 (Ct. App. 1998), *review denied*, 225 Wis. 2d 489, 594 N.W.2d 383 (1999). In this case, the DNR did not petition for judicial review of the ALJ's decision, and adopted the decision as its own pursuant to § 227.46(3)(a), STATS.,[3] and WIS. ADM. CODE § NR 2.155(1).[4] We thus review the ALJ's determina-

(a) Each riparian shall back their respective pier away from the common line or point of intersection of that line with the line of navigation in proportion to the riparian's share of the 2 adjacent shoreline lengths until sufficient room is provided to moor each riparian's boat at their respective pier and to provide safe maneuvering room for each boat to approach or leave the respective pier.

(b) If a riparian cannot move sufficiently from one side without violating the rule on the other side, then the riparian shall position the pier in that location which best satisfies the rule on both sides and each riparian shall then move far enough to the side regardless of shoreline proportions to afford the necessary clearance.

[3] Section 227.46(3), STATS., provides, in pertinent part:

With respect to contested cases except a hearing or review assigned to a hearing examiner under s. 227.43(1)(bg), an agency may by rule or in a particular case may by order:

(a) Direct that the hearing examiner's decision be the final decision of the agency.

[4] WISCONSIN ADM. CODE § NR 2.155(1) provides:

The hearing examiner shall prepare findings of fact, conclusions of law and decision subsequent to each contested case heard. Unless the department petitions for judicial review as provided in

tion as a DNR decision. *See Sea View*, 223 Wis. 2d at 146–47, 588 N.W.2d at 671.

¶ 6. We apply different standards of review to agency conclusions of law and agency findings of fact. *See id.* at 148, 588 N.W.2d at 671. For questions of law, we generally apply one of three levels of deference to the agency's conclusion: "great weight," "due weight," or no deference. *See id.* at 148, 588 N.W.2d at 672. In this case, we will apply great weight deference to the DNR's legal conclusions because the legislature has charged the DNR with regulating piers under §§ 30.12 and 30.13, STATS., and the DNR has technical expertise in regulating piers and waterways. *See id.* at 149, 588 N.W.2d at 672. Under great weight deference, we will uphold an agency's conclusion if it is reasonable, even if there is a more reasonable conclusion available. *See Zignego Co. v. DOR*, 211 Wis. 2d 819, 823, 565 N.W.2d 590, 592 (Ct. App. 1997).

¶ 7. For agency findings of fact, we apply the "substantial evidence" standard. *See Sea View*, 223 Wis. 2d at 148, 588 N.W.2d at 671. Under § 227.57(6), STATS., we must set aside an agency action or remand a case to the agency if the agency's decision depends on any findings of fact not supported by substantial evidence in the record. Substantial evidence is such relevant evidence that a reasonable person might find sufficient to support a conclusion. *See Sea View*, 223 Wis. 2d at 148, 588 N.W.2d at 671.

s. 227.46 (8), Stats., the decision shall be the final decision of the department, but may be reviewed in the manner described in s. NR 2.20. Every decision shall included findings regarding compliance with the requirements of s. 1.11, Stats.

## III. Analysis

### A. *The Town of Linn's Pier Placement Ordinance*

¶ 8. The Town of Linn has enacted a pier placement ordinance that provides, in part:

> (c) *Location of Wharves, Piers and Slips Regulated.* No person shall erect, construct, place, extend or maintain any wharf, pier, boat slip, swimming raft or any structure attached thereto so that it is less than 12–1/2 feet from a riparian proprietor's property line where such property line intersects the shoreline, nor shall the above be erected, constructed, placed, extended or maintained within a distance of 12–1/2 feet from a riparian proprietor's property line, as extended waterward from the shoreline.

Town of Linn Ordinance No. 13.14. In conditioning the Bonannos' permit on obtaining the necessary authority under local zoning ordinances, the ALJ explained:

> It is the responsibility of the applicants to persuade the town authorities that the proposed pier complies with the local zoning ordinances or obtain a variance from the setback requirement. It is beyond the scope of this hearing to interpret the application of the Town of Linn's zoning ordinance to the proposed pier.

¶ 9. Borsellino argues that the DNR exceeded its authority under § 30.12, STATS., by issuing a permit conditioned on the Bonannos obtaining the necessary authority under local zoning ordinances. He explains that, under § 30.12(2), the DNR may not grant a permit for a pier that "materially obstruct[s] navigation." He points out that, under § 30.13, STATS., "[a] wharf or pier which violates the regulations contained in sub. (2) or

438

*in any ordinance enacted under sub. (2)* constitutes an unlawful obstruction of navigable waters." Section 30.13(4)(d) (emphasis added). Borsellino asserts that an "unlawful obstruction" under § 30.13 necessarily "materially obstruct[s] navigation." Borsellino contends that the proposed pier cannot comply with the Town's pier placement ordinance because it is impossible for the Bonannos to set it back twelve-and-one-half feet from their riparian lines. Thus, he argues that the DNR erred by issuing the permit without first interpreting the Town's ordinance to determine whether the pier is an "unlawful obstruction."

¶ 10. We conclude that the DNR's decision to issue the permit conditioned on compliance with the town's pier placement ordinance was reasonable. Under *Sea View*, an ALJ may review local ordinances in making a permit determination under § 30.12(2), STATS., but an ALJ is not required to do so. *Sea View*, 223 Wis. 2d at 159–60, 588 N.W.2d at 676. We do not agree with Borsellino that the proposed pier is barred as a matter of law by the pier placement ordinance. Although the width of their riparian space precludes the Bonannos from meeting the twelve-and-one-half foot setback requirement, the Town of Linn's attorney testified at the hearing before the ALJ that the Bonannos' could request a variance hearing before the town board.

¶ 11. Borsellino asserts that Ordinance No. 13.14 is not a zoning ordinance, but a pier placement ordinance enacted under § 30.13(2), STATS. Thus, he argues the ordinance is not subject to variance procedures or to appeal before the town board as might be a zoning ordinance. He also argues that our conclusion in *Sea View* was based on a zoning ordinance and is not appli-

cable here. Whether or not our holding in *Sea View* is applicable, Borsellino has provided no authority for his assertion that the pier placement ordinance is not subject to appeal or variance procedures as would be zoning ordinances. He has also provided no authority for the argument that the DNR should have resolved whether the Bonannos' pier violated the ordinance before the Town had an opportunity to do so. We will not consider arguments unsupported by reference to legal authority. *See Phillips v. Wisconsin Personnel Comm'n*, 167 Wis. 2d 205, 228, 482 N.W.2d 121, 130 (Ct. App. 1992). Considering that the Bonannos could apply for a variance with the town board, the ALJ reasonably decided not to determine whether the proposed pier complied with the pier placement ordinance.[5]

### B. *Wisconsin Administrative Code § NR 326.07(3)*

¶ 12. Borsellino contends that the DNR erred by conditioning the Bonannos' permit on compliance with WIS. ADM. CODE § NR 326.07(3). He argues that the DNR's condition was contrary to the language of WIS. ADM. CODE § NR 326.07(3) because the Bonannos' cannot comply with the setback provisions of that section because their riparian space is too narrow. Borsellino explains that, under *Sea View*, 223 Wis. 2d 138, 588 N.W.2d 667, and *Godfrey Co. v. Lopardo*, 164 Wis. 2d

---

[5] We granted the Bonannos' motion to intervene in this appeal as respondents. In their brief, the Bonannos assert that the Town of Linn did, in fact, issue them a pier permit. However, we denied the Bonannos' motion to supplement the record to include this fact. We will not consider factual assertions that are not a part of the record. *See Balele v. Wisconsin Personnel Comm'n*, 223 Wis. 2d 739, 752, 589 N.W.2d 418, 424 (Ct. App. 1998), *review denied*, 225 Wis. 2d 491, 594 N.W.2d 384 (1999). The Bonannos' assertion is irrelevant to our decision.

352, 474 N.W.2d 786 (Ct. App. 1991), the DNR was required to balance the Bonannos' riparian rights with those of their neighbors. He asserts that, since the Bonannos' are unable to move their pier to either side in compliance with the setback requirements, the DNR unreasonably placed all of the burden on the Bonannos' neighbors to move their piers.

¶ 13. WISCONSIN ADM. CODE § NR 326.07(3) provides two methods by which adjacent riparians can place their piers so as to provide sufficient room for each to maneuver and moor their boats. Under the first method, each riparian is to move his or her pier back from the common line in proportion to the shoreline length of his or her property until there is sufficient room between the two piers. *See* WIS. ADM. CODE § NR 326.07(3)(a). Under the second method, if one of the riparians cannot move his or her pier

> sufficiently from one side without violating the rule on the other side, then the riparian shall position the pier in that location which best satisfies the rule on both sides and each riparian shall then move far enough to the side regardless of shoreline proportions to afford the necessary clearance.

WIS. ADM. CODE § NR 326.07(3)(b).

¶ 14. We conclude that the ALJ's decision to condition the permit on compliance with WIS. ADM. CODE § NR 326.07(3) was reasonable. We do not agree that, as a matter of law, the Bonannos cannot comply with the code provision. The Bonannos cannot comply with subsection (a) because their riparian space is only twelve feet wide and they could not install their pier away from one common line without encroaching on the other common line. However, subsection (b) provides an alternative for such circumstances. The

Bonannos must place their pier within their twelve-foot space so as to best provide maneuvering room on each side. Since the Bonannos cannot move their pier any further, the burden is then placed on their neighbors to move their piers "far enough to the side regardless of shoreline proportions to afford the necessary clearance."

██

¶ 15. Borsellino argues that, by allowing for such a conclusion, the DNR did not balance the riparian rights of all involved. On the contrary, we conclude that the DNR did balance the rights of all the neighboring riparians in this case. In *Godfrey* we held that "each riparian owner is entitled to exclusive possession to the extent necessary to reach navigable water, to have reasonable ingress and egress to navigable water, and to have reasonable access for bathing and swimming." *Godfrey* 164 Wis. 2d at 374, 474 N.W.2d at 795; *see also Sea View*, 223 Wis. 2d at 157, 588 N.W.2d at 675. We explained that this "rule balances the rights of all lakefront owners and the public to riparian space." *Godfrey*, 164 Wis. 2d at 374, 474 N.W.2d at 795; *see also Sea View*, 223 Wis. 2d at 157, 588 N.W.2d at 675. As lakefront owners, the Bonannos enjoy riparian rights in the same manner as their neighbors. The ALJ considered the proximity of the Borsellino and Ciciaro piers to the proposed Bonanno pier. The ALJ acknowledged the potential for conflict and granted the Bonannos' permit on the condition that they have only one boat slip and moor only one boat at a time to their pier. In doing so, the ALJ acted reasonably.

## C. Public Trust and Reasonable Use Doctrines

¶ 16. Borsellino asserts that the DNR decision to grant a permit for the Bonannos' pier violated the pub-

lic trust and reasonable use doctrines. He contends that, by granting a permit for a pier that fills a riparian space, the DNR violated the public trust doctrine, under which the state holds the beds underlying navigable waters in trust for use by all its citizens. He also explains that a riparian's right to place a pier in the water adjacent to his or her land is a qualified privilege subject to the reasonable use doctrine. He argues that the Bonannos' proposed pier is not a reasonable use of their twelve-foot-wide riparian space.

### 1. Public Trust Doctrine

¶ 17.　The public trust doctrine has its roots in art. IX, § 1 of the Wisconsin Constitution, under which the state holds the beds of navigable waters in trust for public use. *See State v. Bleck*, 114 Wis. 2d 454, 465, 338 N.W.2d 492, 497 (1983).[6] The regulation and enforcement of this public trust rests with the legislature and the DNR. *See State v. Town of Linn*, 205 Wis. 2d 426, 447, 556 N.W.2d 394, 404 (Ct. App. 1996). In enforcing the trust, the legislature may authorize limited encroachments upon the beds of navigable waters when it will serve the public interest. *See Bleck*, 114 Wis. 2d at 465, 338 N.W.2d at 498. Section 30.12, STATS., under which the DNR granted the Bonannos' permit, is an example of such an authorization. *See id.* at 465–66, 338 N.W.2d at 498.

██

¶ 18.　Although, in granting pier permits under § 30.12, STATS., the DNR acts in furtherance of the public trust, Borsellino cannot state a cause of action based only on a general allegation of a violation of the public

---

[6] The doctrine indeed precedes our constitution. *See* art. IV of the Northwest Ordinance of 1787.

trust doctrine. *See Robinson v. Kunach*, 76 Wis. 2d 436, 452, 251 N.W.2d 449, 455 (1977). The public trust doctrine, in itself, does not create legal rights, it "merely establishes standing for the state, or any person suing in the name of the state for the purpose of vindicating the public trust, to assert a cause of action recognized by the existing law of Wisconsin." *State v. Deetz*, 66 Wis. 2d 1, 11, 13, 224 N.W.2d 407, 412–13 (1974).

¶ 19. It is true that when, for instance, the DNR fails to live up to its duties as trustee under the public trust doctrine, a citizen has standing under that doctrine to assert a claim based upon existing Wisconsin law. *See Gillen v. City of Neenah*, 219 Wis. 2d 806, 828–32, 580 N.W.2d 628, 636–38 (1998). In Borsellino's case, however, the DNR was not abdicating its responsibilities under the public trust doctrine, it was fulfilling its duties as trustee, albeit not to Borsellino's liking. In *Gillen*, the plaintiffs alleged that a lake bed had been filled and the land thus obtained was being leased for private purposes, an action prohibited under the public trust doctrine. *Id.* at 812–16, 580 N.W.2d at 630–31. Piers of the sort sought by the Bonannos are a permitted use under the public trust doctrine, though regulated by the legislature and the DNR. *See* § 30.12, STATS.

¶ 20. Borsellino has not sued in the name of the state, and we have already considered his arguments that the DNR violated § 30.12, STATS., and WIS. ADM. CODE § NR 326.07(3), by which the DNR safeguards the public trust. We will not consider his general allegation that the DNR granted the Bonannos' permit in violation of the public trust.

## 2. Reasonable Use

██

¶ 21. Under the common law, riparian rights must be reasonably exercised. *See Sterlingworth Condominium Ass'n v. DNR*, 205 Wis. 2d 710, 731, 556 N.W.2d 791, 798 (Ct. App. 1996). A reasonable use is "measured and determined by the extent and capacity of the [lake], the uses to which it has been put, and the rights that other riparian owners on the same [lake] also have." *Id.*

¶ 22. The ALJ concluded that the Bonannos' proposed use of their riparian space would be reasonable as long as they complied with the conditions of the permit. The ALJ explained that, under *Sterlingworth*, the decision of whether the Bonannos' proposed pier was a reasonable use involved a balancing of riparian rights with the public interest. The ALJ stated that this case did not concern the impact on the public interest as much as potential interference with the rights of other riparians. Acknowledging the need to limit the potential conflicts with the adjacent riparians, the ALJ concluded that the Bonannos' pier would be a reasonable use of their riparian space if it were limited to one boat slip.

¶ 23. We defer to the ALJ's decision regarding the reasonable use of the Bonannos' riparian space. The ALJ limited the proposed pier to one boat slip, the least number possible were any to be granted.

¶ 24. At the hearing, a DNR water management specialist testified that she analyzed the Bonannos' pier permit application. She said she would consider allowing the pier to have two boats moored to it to be a reasonable use. She explained that she did not have any concerns about the environmental impact of the pier, because, as is common with piers on Lake Geneva,

the pier extended to a water depth sufficient that any related boating would not interfere with wildlife and fish habitats in more shallow areas. She also stated that allowing such a pier in a twelve-foot riparian space would not have a significant cumulative impact on Lake Geneva because of the scarcity of property with only twelve feet of lake frontage.

¶ 25. Considering this evidence, a reasonable person could reach the same conclusion under *Sterlingworth* as did the ALJ. Under *Sterlingworth*, the reasonable use doctrine requires consideration of the lake's capacity, the uses to which the lake has been put, and the rights of other riparian owners on the lake. *Id.* The DNR specialist's testimony demonstrates that the Bonannos' proposed pier will not overtax lake capacity or have a negative environmental effect. She also indicated that the Bonannos' pier was consistent with other uses of riparian space on Lake Geneva. After concluding that the public interest would not be significantly affected, the ALJ balanced the rights of all the riparians involved by limiting the pier to one boat slip so as to reduce potential conflicts between the neighbors.

¶ 26. The ALJ's decision to grant the permit was reasonable and based on substantial evidence. We defer to the DNR's determination and affirm the order of the circuit court.

*By the Court.*—Order affirmed.