COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1059**

Cir. Ct. No. **2024TR5980**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

WINNEBAGO COUNTY,

    PLAINTIFF-RESPONDENT,

V.

MICHAEL JON POTRATZ,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Winnebago County: MICHAEL D. RUST, Judge. *Affirmed*.

¶1 GUNDRUM, J.[1] Michael Jon Potratz appeals from a judgment of conviction entered after a jury found him guilty of operating a motor vehicle while intoxicated (OWI). Specifically, he contends the circuit court erred in denying his

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(g) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

motion to suppress the evidence flowing from the blood draw performed on him after a traffic stop, asserting he did not freely and voluntarily consent to the draw. For the following reasons, we conclude the court did not err, and we affirm.

## BACKGROUND

¶2　At the hearing on Potratz' suppression motion, the following relevant evidence was presented.

¶3　Winnebago County Sheriff's Deputy Jacob Noffke testified that he was dispatched to a particular area within the county as a result of a report that a vehicle "had been driving on the wrong side of the road and deviating from its lane before going into a ditch and pulling into a driveway." After locating and then approaching the vehicle, the deputy observed that there was only one occupant in it, and he "appeared to be passed out." The occupant eventually woke up and was identified as Potratz. Potratz emitted a strong odor of intoxicants, had difficulty balancing, had glossy eyes, evidenced "six out of six clues" on the horizontal gaze nystagmus test, and admitted he had "had a couple" of alcoholic drinks that evening.

¶4　Potratz was eventually taken into custody, and the deputy read him the Informing the Accused form, which was admitted into evidence at the hearing. After the deputy read him the form, Potratz agreed to submit to an evidentiary chemical test, so the deputy transported him to a hospital for a blood draw.

¶5　At the hospital, when the phlebotomist entered Potratz' room to perform the blood draw, "[h]e started shaking his head no, saying that he did not want to … give his blood." In response, the deputy

2

> initially told him that … we would go outside and we just had more paperwork to complete at that point. [Potratz] started talking about how he didn't like needles. And so I told him that if he were to refuse that I would be applying for a search warrant, and if it is granted that we would still take his blood and there would still be a needle involved.

Potratz then "said he didn't want to refuse, he just did not like needles. He was back and forth on whether or not he wanted to give his blood. So I told him we can either do this or he can refuse. And he again stated he did not want to refuse." When asked whether Potratz "ultimately … consented to his blood being drawn on that date," the deputy responded, "He did." The deputy agreed that he believed he had probable cause for a search warrant if securing one became necessary.

¶6      On cross-examination, the deputy confirmed that he remembered Potratz saying "no" when the phlebotomist told him she had to draw his blood and that he then discussed with Potratz that if he refused, the deputy would have to do more paperwork, call a judge, and get a warrant. After watching video from that night that was captured on his body camera and admitted into evidence, the deputy agreed Potratz shook his head and looked at the deputy when the phlebotomist had said to him "this is just blood." The deputy confirmed Potratz said "no" to having his blood drawn. The deputy then told Potratz he would have to get a search warrant, and Potratz shook his head and said "no" a second time. The deputy agreed he then told Potratz "we will be able to draw it anyway if that warrant is granted" and asked him, "Do you understand that?" Potratz responded with words to the effect of "fine, just do it." The deputy agreed that when the phlebotomist left the room to get a nurse to assist with operating the bed Potratz was on, the deputy indicated to Potratz that the deputy was "not marking it as a refusal because [the deputy] d[idn't] know if he really want[ed] to refuse." The deputy testified that Potratz "said something … to the effect of not … wanting to refuse."

The deputy again confirmed telling Potratz that if he refused, the deputy would attempt to get a warrant for the blood draw.

¶7 The deputy agreed that after the nurse came in and laid down the bed to proceed with the blood draw, Potratz crossed his arms and sat up, and when the nurse then talked to him about laying back and having his blood taken, Potratz "again … shakes his head no." The deputy confirmed Potratz then "start[ed] to lay back and sits forward and says, I just want to go home," to which the deputy informed him that "going home is not an option here, your option is to take the test or to refuse the test." The deputy agreed that Potratz then asked "to do something else" and the deputy responded, "[N]o, we can't, blood is what we do." The deputy did not believe there was any other conversation between himself and Potratz before hospital staff took his blood. The deputy stated that he was the only officer in Potratz' hospital room.

¶8 Considering the supreme court decisions of *State v. Artic*, 2010 WI 83, ¶33, 327 Wis. 2d 392, 424, 786 N.W.2d 430, and *State v. Phillips*, 218 Wis. 2d 180, 198-200, 577 N.W.2d 794 (1998), and the six factors discussed therein for determining if consent is voluntary, the circuit court denied the suppression motion, determining Potratz voluntarily consented to the blood draw.

> I do believe [the six factors] weigh in favor of the County and the voluntariness of the decision that was made by Mr. Potratz to provide the consent to the blood draw. In looking at the video …, Mr. Potratz does voluntarily lie back at the request of the phlebotomist. While there were definitely … moments where Mr. Potratz did shake his head or otherwise say he … didn't like the concept or he wanted to go home, that doesn't, to me, state that he was refusing to take this test, and his choice to voluntarily lay back at the request of the phlebotomist is not coercion by law enforcement to take this test.

4

> As I look … at each of the six factors as required under **Phillips**, I do find that each of them does fall … in favor of the County. There was no deception. There was no threat. There was a nonthreatening and cooperative atmosphere.… [T]here was actually an initial grant, not an initial refusal.… [T]here is no evidence that there would be any limitation of the defendant's ability to consent or to refuse. And he was repeatedly informed of his right to refuse … or consent, and every time that the deputy did state that this was a choice that he was making to refuse that … they would seek a warrant and, if granted, they would move forward to a blood draw anyway. And, ultimately, it was Mr. Potratz who did lay back of his own volition to allow that test to continue.

¶9      Potratz subsequently was found guilty at a jury trial of OWI. Following the imposition of his sentence, he now appeals.

## DISCUSSION

¶10      Potratz insists his consent to the blood draw was not freely and voluntarily given and the circuit court erred in determining otherwise in denying his suppression motion. We disagree.

¶11      The County "bears the burden of proving that consent was given freely and voluntarily, and it must satisfy that burden by clear and convincing evidence." *See Artic*, 327 Wis. 2d 392, ¶32 (citation omitted). A circuit court determines whether the County has shown free and voluntary consent by considering the totality of the circumstances in light of multiple nonexclusive factors:

> (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age,

> intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.

*Id.*, ¶32-33 (citing *Phillips*, 218 Wis. 2d at 198-200).

¶12    "When we review a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the circuit court's findings of fact. However, we review the circuit court's application of constitutional principles to the findings of fact de novo." *State v. Smiter*, 2011 WI App 15, ¶9, 331 Wis. 2d 431, 793 N.W.2d 920 (2010) (citation omitted).

¶13    As the appellant, Potratz bears "the burden of … demonstrat[ing] that the [circuit] court erred." *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381.

¶14    In his brief-in-chief, Potratz develops no legal argument in support of his contention that he did not freely and voluntarily consent. While he details particular facts from the evidentiary hearing that he views as favorable to him and lists the above *Arctic/Phillips* factors, he fails to discuss how those factors apply in this case in light of the evidence presented at the hearing. Rather than making a legal argument based on *Arctic*, *Phillips*, or any other legal authority, he instead relies on his *ipse dixit* conclusion that he did not consent to the blood draw. Because he fails to develop a legal argument, we could end our review there and affirm. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."); *Borsellino v. DNR*, 2000 WI App 27, ¶11, 232 Wis. 2d 430, 606 N.W.2d 255; *ABKA Ltd. P'ship v. Board of Rev.*, 231 Wis. 2d 328, 349 n.9, 603 N.W.2d 217 (1999) (stating we do not address undeveloped arguments). Nonetheless, we will do more.

6

¶15    In denying Potratz' suppression motion, the circuit court considered the evidence and applied the *Artic*/*Phillips* factors, with which, again, Potratz fails to engage.  Like the court, the County, in its response brief, does a good job of ticking through the *Artic*/*Phillips* factors and applying them to the evidence from the hearing.  We deem it appropriate to simply adopt those arguments here:

> The first factor, whether the police used deception, trickery, or misrepresentation goes in favor of voluntariness.  Deputy Noffke did not use any deception, trickery, or misrepresentations in obtaining consent from Mr. Potratz.  Deputy Noffke transported Mr. Potratz to the hospital after Mr. Potratz was read the Informing the Accused form verbatim, and consented to a legal blood draw.  At the hospital, when the phlebotomist entered the room to complete the blood draw, Mr. Potratz began shaking his head no and stated he did not want to give blood.  Mr. Potratz further informed Deputy Noffke that he did not like needles.  At this point, Deputy Noffke informed Mr. Potratz that if he was now going to refuse the blood draw, Deputy Noffke would have to apply for a search warrant, and if it was granted, the blood draw would nonetheless be done and would involve a needle.  Mr. Potratz responded to this information by stating he did not want to refuse, he just did not like needles.
>
> This first factor weighs in favor of voluntariness because Deputy Noffke acknowledged that there were two clear options here, that Mr. Potratz either consent to the blood draw or he could refuse, and if a warrant was granted, the blood draw, involving a needle, would still happen.  Nothing about what Deputy Noffke told Mr. Potratz was false or misrepresented.
>
> The second factor, whether the police threatened or physically intimidated the defendant or "punished" him also weighs in favor of voluntariness as Deputy Noffke did not threaten, intimidate, or punish Mr. Potratz.  When Mr. Potratz began shaking his head and indicating he did not want the blood draw to be completed with a needle, Deputy Noffke responded by informing Mr. Potratz that he would simply apply for a warrant based on probable cause.  The *Artic* Court found that "[t]hreatening to obtain a search warrant does not vitiate consent if 'the expressed intention to obtain a warrant is genuine. . . and not merely a pretext to induce submission.'"  *Artic*, 327 Wis. 2d [392,] ¶41

7

(internal citation omitted). Here, Deputy Noffke's statement that if Mr. Potratz refused, he would apply for [a] warrant, and if the warrant was approved, the blood draw would happen anyway[], was not a baseless threat. This is confirmed not only by Mr. Potratz's agreement that there was sufficient probable cause to arrest, but Deputy Noffke further testified that he believed he had sufficient probable cause to obtain a warrant.

The third factor, whether the conditions at the time of consent were non-threatening and cooperative, again goes in favor of voluntariness. Here, there was no show of force. While there was additional hospital personnel present at the time, Deputy Noffke was the only law enforcement officer in the room, and there was no show of force.

The fourth factor, which considers how the defendant responded to the request to search, is also in favor of voluntariness. "An initial refusal of a request to search will weigh against [a] finding of voluntariness." *Artic*, 327 Wis. 2d [392,] ¶56. Here, Mr. Potratz initially consented to a legal blood draw after Deputy Noffke read him the Informing the Accused form verbatim. While later at the hospital Mr. Potratz shook his head indicating he did not want the blood draw to be conducted, and made numerous statements that he did not like needles, Mr. Potratz also seemed hesitant to be marked as a refusal. Ultimately, Mr. Potratz re-affirmed his earlier consent when he allowed the blood draw to be completed. This factor also goes in favor of voluntariness.

The fifth factor, which examines the characteristics of the defendant, is also in favor of voluntariness. "A person need not possess exceptional intelligence, legal knowledge, or experience with law enforcement to give voluntary consent." *Artic*, 327 Wis. 2d [392,] ¶59. Rather, the focus is on "whether there was evidence suggesting that the defendant was particularly susceptible to improper influence, duress, intimidation, or trickery." *Id.* [(citation omitted).] Here, there was nothing in the record indicating Mr. Potratz was otherwise susceptible to undue influence or intimidation. Thus, this factor would go in favor of voluntariness.

Finally, the sixth factor, which considers whether an officer informed the defendant he could refuse to consent, also weighs in favor of voluntariness. While officers are not required to inform a defendant of a right to refuse to consent, it is clear from the record that Mr. Potratz knew he

> had the right to refuse to consent to the blood draw as he was read the Informing the Accused, which provided him with two choices, to either consent or refuse. When Mr. Potratz was subsequently informed that if he refused Deputy Noffke would apply for a warrant, Mr. Potratz explicitly told Deputy Noffke that he did not want to refuse, he just did not like needles. Therefore, this factor also goes in favor of voluntariness.
>
> When considering the totality of the circumstances, it is clear that Mr. Potratz consented to a legal blood draw and evidentiary chemical test of his blood and that consent was given freely and voluntarily, as all six factors for voluntariness have been met.

(Record citations omitted; footnote omitted.)[2]

¶16      Even in his reply brief, Potratz fails to wrangle with the *Arctic*/*Phillips* factors. Instead, he focuses on an argument that he *revoked* his consent to the blood draw. While we do not consider this argument because he raises it for the first time on appeal, and in his reply brief no less, *see Northern States Power Co. v. National Gas Co.*, 2000 WI App 30, ¶21 n.6, 232 Wis. 2d 541, 606 N.W.2d 613 ("We do not generally consider issues raised for the first time on appeal, nor do we consider arguments made for the first time in a reply brief to which the respondent does not have the opportunity to respond." (citations omitted)), it is also insufficiently developed, so we could reject it on that basis as well.

¶17      As indicated, as the appellant, Potratz bears the burden of demonstrating that the circuit court erred. He cannot meet that burden when he fails to sufficiently develop an argument as to such asserted error. Moreover, in

---

[2] The County further states that "[t]his court and the United States Supreme Court have refused to adopt a requirement that officers must advise a person of a right to refuse consent. *State v. Artic*, 2010 WI 83, ¶60, 327 Wis. 2d 392, 424, 786 N.W.2d 430, 446."

this case, the State more than sufficiently shows that, when considering the totality of the evidence in light of the relevant factors a court is to consider, the court did not err in its determination that Potratz freely and voluntarily gave consent to the blood draw.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.